Before I begin my argument, I have a highlighted copy of Endorsement 6 with some notes on the policy. Could I hand that to the clerk to provide to you? That would be fine. Okay, please proceed. Thank you, Your Honors. Good morning. May it please the Court, my name is Leonard Feldman. I'm counsel for the plaintiff appellants Brad and Elizabeth Ausmus. I'd like to reserve five minutes for rebuttal, but I'll keep track of my own time. Thank you. As you know, there's two issues in this case. The first is whether Endorsement 6 is clear and conspicuous as required to be enforceable under California law. And the second issue is whether Endorsement 6 is also unenforceable because Lexington failed to give notice that it was reducing the scope of coverage as is also required under California law. The District Court held that Endorsement 6 was enforceable and it dismissed the plaintiff's claims under Rule 12b-6 and we now ask this Court to reverse. Starting with the first requirement, which is the clear and conspicuousness issue, there are literally dozens of cases addressing these issues, but there's a few legal principles that emerge from those cases. With regard to conspicuousness, courts have held that exclusions are not enforceable if they're buried in fine print, if there's no clear relationship to the insuring clause. And with regard to clarity, courts have likewise held that exclusions must be plain, clear, and also that they have to be understandable to an average layperson. And it's this last requirement that's particularly important because Endorsement 6 is not clear and understandable to a layperson and it's also not conspicuous. And the best way to show that is just to simply walk through the policy using the piece of paper that I've provided to the Court. The cover to the policy is at ER 315. That's a letter indicating that Lexington is uniquely able to move quickly and provide meaningful solution to your evolving risks this year and the next. So right up front, there is an expectation that if anything, coverage has expanded, not that it has contracted. The next two pages are the form schedule. And at the very end of the second page of that form schedule, along with many, many other endorsements, is a list that indicates Endorsement 6, but it's described as the past work exclusion. The next page is the declarations page. It states the amount of the premium and the applicable limits of coverage without any reference at all to a past work exclusion. And then, of course, at ER 332, we have the insuring clause. That's the product's completed operations hazard coverage provision, which once again states that the policy provides coverage for your work and defines that phrase without any temporal limitation. So now we get to ER 372, 40 pages later. There's a page, Endorsement 6. The first thing to note is that it's not entitled past work exclusion. In fact, those words, past work exclusion, can't be found anywhere on this page. No, but the part you've highlighted starts out. This endorsement changes the policy. Please read it carefully. Exclusion, designated work. And it's in caps, right? It's not buried in some footnote in fine print. Right. And the point that we made in our briefs is that's not the operative part of this page. The operative part of this page is the very, very, very, very bottom where it says, this insurance does not apply to bodily injury or property damage included in the product's completed operations hazard and arising out of your work shown in the schedule. So that's at the bottom of the page after the reader has either somehow survived getting through a bunch of meaningless text or given up. And again, you know, we're looking at this in 2010. We're looking at it with hindsight. We're lawyers. We're judges. And we have insurance technicians involved in this case. This is a contractor who gets this policy in April 2004, and is supposed to figure out from this that at the very, very bottom of this page that's entitled Endorsement 6 with a heading, and as you point out, it is capitalized. It says it changes the policy. All the exclusions are at the back of the policy. Just because it's located at the back, you find that significant? Where would you want it? In the middle, up front? Is there some preferred location? Yes, there is. There is a preferred location. And Haynes makes that very clear. The preferred location is on the declarations page. There are a number of instances where this insurer could have made this language apparent. But if it's on the declaration page, you don't have the context. I would disagree with that. So then you could complain that it's isolated, it's not explained. So the insurance company is in a tough position to try to figure out where is the place to put this that it would be most noticeable. Right. So if you put it in the front, you don't have the context. If you put it in the back, you've taxed the attention span of the reader. So it's a tough situation. I don't think it's tough. And I think part of what has to be considered here is that this is a heightened burden, that California courts have been very diligent in enforcing this heightened burden, and there's a solution here, which is to say, this policy does not apply to property damage arising out of work completed prior to April 1, 2001. That is a very short sentence. It could have been located anywhere in this policy. It could even have been located on endorsement number six, but it isn't there either. So what is the California case that you think is closest to the facts of this case and supports your argument? Well, Your Honor, with regard to conspicuousness, the cases that we rely on are Thompson and Haynes. Is that your best case? I think so, Your Honor, yes. And with regard to clarity, the cases that we rely on are Ponder and Coonan. But I think the best case, frankly, is the one that we provided to the Court with our 20HA letter. That case, which is an unpublished district court decision, applies to these other cases that I just mentioned and has an exclusion that's very much like ours, where it's sort of a connect the dots. The Hall case. The Hall case. And what the Court said is that there is a right way and a wrong way to exclude coverage. The right way is to do it clearly so that an average layperson can understand it. But there's more than one way to do it the right way, isn't there? That's correct. And what's hard about this case is that there isn't a case that's directly on point. Every case is different. What we have here, though, is not just one or two or three of these issues that have led courts to conclude that a policy exclusion is not enforceable, but we have all of them. We have the fact that it's not listed on the coverage page. We have the fact that it's. . . You keep saying that, but, in fact, there is a form scheduled near the beginning of the document which lists exclusions, including past work exclusion. So it's not just at the back. There's a tickler up front. And before that page is a page that says that we're expanding coverage and we're here to help. But after that page is a page that says that you have coverage and it lists the policy limits. And so what you have to assume then is that the reader is going to see, buried on the second page of the form schedule, this reference to past work exclusion, and then is going to find it as Endorsement 6, which doesn't use that language. How is it buried on the second page? Is there some dirt covering it up or what? What does buried mean? It's listed on the second page. It's there. It is. And I use the word buried because the courts tend to use the word buried. And usually they use it in the sense of buried in a river of fine print. And I would say that that is not a river of fine print, but it's a river of exclusions. And an average layperson is not going to pick up on Endorsement 6. An average layperson isn't going to be able to get through this policy. And I would submit that that's the way it was designed. There's a very simple solution. The insurance company could have done that. They did everything wrong. And one of the things that we also point out in our briefing is that the policy provides coverage for the point that I'm getting at, Your Honor, is it's the exact same phrase. It's your work. I'm sorry, I don't know why that was escaping me. But the policy defines your work, and it says your work is covered. The exclusion says your work, the exact same phrase, is not covered and provides a different definition of it. And that, too, is confusing to an average layperson. So once again, the insurance company here has done everything possible to make this difficult to understand. And as a judge or a lawyer, I can read this page. I can figure out in hindsight what it meant. As a layperson looking at this in April 2004, I'm quite confident I would have had no clue. And that is not sufficient under California law. Are you giving up on your notification of reduction in coverage argument? Not at all, Your Honor. And the reason that we have that as our second argument is because it's not dispositive. So there's a very different, very big difference between these two arguments. If the court concludes that Endorsement 6 is not clear and conspicuous and understandable, Endorsement 6 disappears from this case. If the court instead finds that there wasn't notice, essentially the fields argument, then the district court's decision is vacated, not reversed, but vacated, and then the matter is remanded back to the district court so that Lexington can attempt to show, if it can, that it did, in fact, give notice. But under a Rule 12b-6 context, it has been alleged that they did not give notice, and that's binding for purposes of both the 12b-6 decision then and on appeal now. So that's why it's our second argument, not our first argument. But it's a very powerful argument. Factually, the only fact is what I just mentioned. It's alleged in the complaint that there was no notice. And legally, there's the fields case, which is directly on point, and it makes it crystal clear. You're not arguing that the statute required it, are you? No. That argument. You said it was not covered by 678.1c, and you conceived that. I conceived that, Your Honor. But there were two bases for the notice argument in the district court. One being the common law argument you're going to make now? That's correct. An argument that you did not make in your brief in opposition to summary judgment. Well, it was a brief in opposition to a motion to dismiss, and it was absolutely made in that context. And I'll read from it. It's at ER 148. What they said in that brief is, In Fields, the court held that the insurer could not rely on the lesser coverage in a renewal policy because Blue Shield did not notify Dr. Fields by clear conspicuous notice in an expected place that coverage she originally had was now totally withdrawn. Fields was decided before the statute, and it doesn't mention the statute. So it is a common law case, and it is a common law argument. Why does it survive the statute? It survives the statute because the statute deals with an entirely different issue, which is whether notice has to be given as to surplus lines insurers, and it says as to those insurers notice does not have to be given. Fields says that notice has to be given as to those policies. So the statute preempts them by the statute passing that change. It can't preempt it because what you're talking about is preemption by implication. And California courts have been very guarded about preemption by implication. There is absolutely no reason why the Fields requirement, which this Court has described as a general principle on the one hand, and the statutory requirement cannot both be enforced. Why pass the statute then if Fields is still controlling? I think that I don't know why the legislature passed the statute, but I'm guessing that they wanted to make sure that as to those insurance companies that they could regulate by statute that those insurance companies gave notice. And as to the others that they could not regulate by statute because they are excess lines insurers, that issue was addressed by the courts and would continue to be addressed by the courts. And if the California legislature had thought to and intended to abrogate that body of law, it was certainly within its ability to do so, and it didn't. And under the California cases that we cite in our reply brief, that is dispositive of the preemption argument. All right. Thank you, counsel. You want to save some time for rebuttal? I do. Thank you, Your Honor. Good morning. Mitch Tilner for the appellees. First, I'd like to address the issue of conspicuousness. The cases are very clear and consistent that a limiting endorsement is conspicuous when the declarations page or a table of contents or a form's schedule is not clear. And I think it's important to note that the form's schedule at the beginning of the policy names the exclusion and directs the reader where to find it. The case we sent to the court recently in our 28J letter, North American Capacity, is very similar to our case. In that case, the opening pages of the policy referred the reader to a form's list attached. The form's list, in turn, mentioned the exclusion in question and told the reader where to find it. The court there held this endorsement could not have been more conspicuous. And I think the observation was correct. There are many endorsements to this policy. And you don't know in advance which one is going to be important in any given case. You can't put them all at the beginning because then some is going to be ‑‑ some of them are going to be back and some are going to be in front. But our policy is very similar to the format approved in North America, and very similar to the format approved in Merrill and Seeley, where the cover page directed the reader to a form attached, held the provision was conspicuous. Now, let's take a look at our policy and see how similar it is to these formats that have been approved. In our policy, by the way, the policy in question did not have the cover letter counsel mentioned. The cover letter accompanied the policy from the year before. So our policy in 2005 doesn't have the cover letter. The fourth page of the policy is the declarations page. That is the page the insured is most likely to look at because it has the policy limits and it shows the premiums due. Our declaration page informs the reader in boldface and capitalized text, endorsements attached to this policy as per schedule. Very similar to the North American case. The schedule in question is the second page of the package, titled in boldface capitals, forms schedule. On the second page of the forms schedule, it lists endorsement number six. It describes it as past work exclusion. So the reader immediately knows there's an exclusion in this policy having to do with past work, and it will be found at endorsement number six. So endorsement number six itself is a separate sheet attached to the policy. It's not buried in a paragraph of unrelated text. It's a freestanding separate sheet. So the endorsement was conspicuous. The suggestion that it had to be identified on the declarations page finds no support in the case law. Certainly that's permissible. That's one way to do it. What about the Hall case that is cited by your opponent? The Hall case is a fact-specific case, Your Honor. The Court there looked at an application and described it in great detail. It's very fact-specific. It really sheds no light on our case. That's on the issue of plain and clear, which I would like to address as well. But when it comes to whether an endorsement is plain and clear, it's really a fact-specific inquiry. Every policy is different. If you've made the point of comparing your contract to the ones that you think, the cases that you think are close, and so he used Hall for the same purpose, so why can't we say the same thing? The cases you're citing are fact-specific and don't help your argument. Well, I'm citing cases on the issue of whether the endorsement was conspicuous, and there the cases do illuminate the question. Counsel citing cases on the issue whether the language is plain and clear, which is a separate requirement under California law, but there the cases are really fact-specific because it turns on what words the company used, what font they used, how they arranged the page. And so I'd like to address that point as well. This endorsement used ordinary, non-technical words to explain the policy no longer covered work performed before April 1, 2001. Counsel criticizes the endorsement on the ground that the operative language was in the last paragraph on the page. This is a single-page endorsement. In capital letters, it says, This changes the policy. Please read carefully. This endorsement was written for a business person, a lay person, true, but a business person. This policy was not written for a third grader. I think an insurer can reasonably assume that a business person will read to the end of the page and will not stop halfway down the page. And when you read the whole page, you see that the policy excludes coverage for the past work described in the schedule, which appears immediately above the operative language in the center of the page. Your opponent argues that the definition of, quote, your work, and, quote, found in the definition section is confusing with the definition in endorsement six. Yes, Your Honor. Let's say you. First of all, endorsement six does not define your work. There are not two conflicting definitions. What endorsement number six does is to carve out a portion of your work that would otherwise be covered under the standardized terms. That's exactly what an endorsement is for. It limits or modifies the standardized language by taking away or cabining the coverage available in the policy. So there's no way to modify or limit your work without mentioning your work. The endorsement says we are limiting some of the coverage otherwise available for your work. Specifically? Work prior to April 1, 2009. Exactly. That's exactly what it does, and the cases are very clear. An endorsement can modify a policy to the extent the two are inconsistent. The endorsement always controls. That's the very purpose of it. You want to address the other argument? Yes, Your Honor. If the Court agrees with us that the exclusion is plain, clear, and conspicuous, that really ends the case, because under Fields and under California law, that is the notice to the insured. Fields says the notice must be in an expected place. So we don't need to reach the second argument if we find in your favor on the first argument? I believe that's correct. The Court may — if the Court agrees with us on the first argument, the Court may then say that is the notice to the insured, and no independent analysis is required. But if we do reach it, talk to me about whether the statute changed the common law, whether the common law continues the same discussion I had with — Whether the issue was raised in the district court. Yes, Your Honor. As counsel conceded, they no longer contend that the insurance code, the statute, required Lexington to provide any notice. Instead, they're arguing a public policy notice requirement. That was not raised below in opposition to the motion to dismiss. The district court so held, and that was not an abuse of discretion when the court so ruled. Well, they did attempt to raise it again in the Rule 59 motion. Yes, Your Honor. Why doesn't that raise it so that the district court can decide it? Well, Your Honor, a Rule 59e motion is not the proper vehicle for making a new argument that could have been presented in the principal brief. The cases are very clear. It's not designed to give counsel a second chance to make a better argument. Well, if the common law argument was before the district court and the district court didn't reach it, how do we know what the district court would have done if it didn't say? Let me explain why, if this Court does decide to reach the argument, the Court should reject it, if the Court is considering the merits of that argument. First, as I mentioned, Lexington provided conspicuous, plain, and clear notice in an expected place. That's what California law required under their theory of public policy, under the Fields case. So Lexington has satisfied the notice requirement. So, counsel, do you have a case that says the endorsement itself constitutes the notice that's required under Fields? Well, Fields itself says that the limiting language must be, must appear in an expected place in the policy. We also have the Malcolm case, which is cited in our brief. In there, in that case, the exclusionary provision appeared in the policy. It was listed in the table of contents to the policy. The Court held that was a conspicuous and forcible exclusion. So you don't see the notice requirement as being separate and apart from the clear and conspicuous requirements? That's correct, Your Honor. If the exclusion itself is drawn to the reader's attention and is clear, plain, and conspicuous, that is sufficient notice. Now, there are cases where the exclusion is inconspicuous. Now, in that case, the insurer can save itself by providing some other notice independent of the policy, perhaps, in a cover letter, in some other manner. That's another way to do it. That's another way to provide notice. But the whole point of the clear, plain, and conspicuous requirement is that you, the policy itself, notifies the insured that coverage is limited. That's why all these cases are examining the question whether the exclusion itself is clear, plain, and conspicuous. They ask that question because they want to know, would the insured receiving this policy be on notice that coverage is limited? Now, in their opening brief, plaintiffs don't allege that the law required a separate notice. So I don't believe they're making that contention. In fact, it's not quite clear what their contention is on the notice issue because they don't contend a separate notice was required. And they don't dispute that Fields holds that if there's conspicuous notice in an expected place, the case is over. So we were a little puzzled about what their notice argument added to the analysis. Thank you very much. Thank you. Rebuttal. Counsel, perhaps you can clarify for us what your notice argument is. Yeah, and I think, Your Honor, that the notice argument is exceedingly clear. California courts have held that in addition to an exclusion being clear, conspicuous, and understandable, that when there is a reduction in coverage, so that's the triggering event, when there is a reduction in coverage, the insurance company has to also provide conspicuous notice that it is reducing its coverage. So is it your position that those two requirements cannot be met in the same document? Absolutely, because otherwise there wouldn't be a notice requirement under Fields because the policy itself would satisfy that requirement. How about the endorsement satisfying? You have the main policy that's done some period before, then you have the endorsement that provides the notice in clear, conspicuous language. Why doesn't that satisfy Fields? Because the endorsement is part of the policy. That's what it does. But the case that we would rely on, Your Honor, which we cite in our reply brief, is the Purdy case. And I think that the Purdy case is directly on point. Quoting from that case, the court there said, the mere receipt of the insurance policy, which here would be the mere receipt of the policy with the endorsements, and I'm continuing to quote, does not serve to charge the insured with constructive knowledge of the firearms exclusion. And then it goes on to say, the trial court's determination that the policy itself gave constructive notice of the firearms exclusion is improper. So there are two requirements. There's the requirement of a reduction in notice when there's a reduction in notice. And that's the Fields decision, which is entirely based on the common law, and the Purdy decision, which rejects the notion that the policy with the reduced coverage can in fact be the notice of the reduced coverage. And this issue was clearly and expressly raised below. It was raised in the opposition to the motion to dismiss. And, frankly, I think what happened to that question. No, I'm sorry. But it wasn't fleshed out at all. I think it was fleshed out, because first they cited the Fields case, and then after citing the Fields case, there was a paragraph that said, here's what Fields means here. And I think what happened was when Lexington filed its reply brief, they addressed the 678 argument. They said nothing about the Fields argument. The district court looked at all the briefing and said, there doesn't appear to be a Fields argument. Usually the district courts are pretty diligent about searching for the issues that are presented by the parties. And I would agree with that, except for this case. Well, on page 4 on the decision denying the reconsideration, the judge notes that the opposition to the motion to dismiss lacks the key language from the Fields case that you're now relying on. And he goes on to say, plaintiffs, for plaintiffs to argue that two omitted sentences from a case, quote, should serve to raise a distinct legal claim for liability is beyond disingenuous. Right. And I think that. Are the facts wrong there? Yes. Absolutely. Why? You didn't include those two sentences? No. We included in the opposition to the motion to dismiss the operative language. We explained what the holding of Fields was, and we applied the holding of Fields to the facts at issue. In the motion for reconsideration, the lawyers representing the auspices in the trial court made the decision to point out other language. But that doesn't change the fact, going back to the opposition to the motion to dismiss, that the critical language in the case was there, too. It was just different critical language. And there are many instances in the Fields case where it characterizes its holding, some of which were cited in the opposition to the motion to dismiss, others in the motion for reconsideration. But what I would submit, Your Honor, is that looking at the opposition to the motion to dismiss, there's an argument heading relating to notice, there's a citation to the Fields case, there's an application of the Fields case to the facts here, that that by itself is enough to raise the issue. And the district court should have addressed it. And the district court obviously, I think, was defensive when it was suggested that the district court overlooked it. But maybe that's understandable, too. But the simple fact is that it was adequately raised. And I don't think under this Court's case law that's even arguable. We cited two cases from the Ninth Circuit saying that an issue is adequately raised below if the key case is cited and there's a request to apply that case to the facts at issue. And that's what happened. All right. Counsel, thank you. You can cede your time. Thank you to both counsel. The case just argued is submitted for decision by the Court. The final case on calendar for argument is Knoll v. Travel Centers of America.
judges: Zouhary, Goodwin, Rawlinson